UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ROBERT E. POLES,

                        Plaintiff,

              -against-

BROOKLYN COMMUNITY HOUSING AND
SERVICES; JEFF NEMETSKY; EXECUTIVE DOE;
EXECUTIVE ROE; DORIAN MULLER; ROBIN
WALKER; BORAH, GOLDSTEIN, ALTSCHULER,
NAHINS & GOIDEL, P.C.; SUPERVISOR
ATTORNEY DOE; CHRISTOPHER HALLIGAN;
ROSALYNE ANNA PAK; MATTHEW WEILGUS;
PAUL DANKEL; and ERIC J. RIVERA,

                        Defendants.
------------------------------------------------------------------x

NOT FOR PUBLICATION

**MEMORANDUM AND ORDER**

10 Civ. 1733 (BMC) (LB)

**COGAN**, District Judge.

Pro se plaintiff Robert E. Poles bring this action pursuant to 42 U.S.C. §1981 and §1985. Plaintiff's request to proceed *in forma pauperis* is granted, but the Complaint is dismissed for the reasons set forth below.

## BACKGROUND

According to the Complaint, plaintiff was accepted into the Oak Hall Program, an assisted living facility operated by defendant Brooklyn Community Housing and Services ("BCHS"), in December 1999. BCHS is a non-profit organization that provides assisted living for adults with psychiatric histories. Plaintiff alleges that he was qualified for housing and the program's support services "as a psychiatrically disabled United States military veteran who was homeless, with a history of substance abuse" and was accepted as a tenant in December 1999, at

1

which point he entered into a housing contract with BCHS. At some time prior to March 2007, plaintiff became active in the tenants' association, which he claims brought him into conflict with defendants Robin Walker and Dorian Muller, both BCHS employees. Plaintiff alleges that as a result of this adversarial relationship and in retaliation for his activities in the tenants' association, Walker and Muller sought to remove him from BCHS housing.

In March 2007, BCHS initiated an eviction proceeding against plaintiff for nonpayment of rent. BCHS engaged defendant law firm of Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. ("Borah Goldstein") to prosecute the eviction proceeding. Borah Goldstein attorneys, defendants Christopher Halligan, Rosalyne Anna Pak, Matthew Weilgus, and Supervising Attorney Doe, worked on the matter. Defendants Paul Dankel and Eric J. Rivera were engaged as process servers and swore that they served the rent demand, "FDCPA letter," and notice of petition and petition on plaintiff on March 29, 2007 and April 13, 2007. Plaintiff claims that he was never served with any of the documents and first learned of the eviction proceeding from the Housing Court, following and as a result of which he "suffered profound nervous breakdowns."

On May 15, 2007, Halligan appeared at what plaintiff described as "a pre-hearing conference encounter" in the Housing Court proceeding. According to plaintiff, Halligan knew about his psychiatric history and intentionally made "extremely antagonistic and acrimonious personal remarks concerning the race of Plaintiff Poles obviating Defendant's Halligan's invidious animosity based upon the race of the Plaintiff, an African American/Black" in order to cause "substantial mental and emotional disequilibrium . . . severely aggravating a previously existing psychiatric disorder for an extended time."

2

The eviction proceeding against plaintiff was dismissed on August 30, 2007 and he continues to reside in BCHS housing. Plaintiff asserts that defendants' actions caused him severe psychiatric damage. He asserts causes of action pursuant to 42 U.S.C. §1981 and §1985 and multiple state law provisions and seeks unspecified compensatory and punitive damages.

## DISCUSSION

### A. Standard of Review

The Court is mindful that "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Where, however, the problems with the causes of action are "substantive" and would not be cured with "better pleading," repleading would be futile and any such request should be denied. Id.; see 28 U.S.C. §1915(e)(2)(B).

### B. 42 U.S.C. §1985 Claims

Plaintiff alleges that all of the defendants conspired with each other to deny him the equal protection of the laws, in violation of his civil rights under 42 U.S.C. §1985. Subsections (1) and (2) of that title are inapposite to this claim, as they address conspiracies to interfere with federal officers and federal court proceedings. Subsection (3), however, provides a remedy to redress conspiracy by two or more persons "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

3

In order to reach a purely *private* conspiracy under subsection (3), "a plaintiff must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268, 113 S.Ct. 753 (1993) (internal quotations and citations omitted). The first component requires both class-based animus and discriminatory intent. <u>Id.</u> at 271-73. The second component applies to a narrow band of rights that are specifically protected against private impairment. <u>See id.</u> at 274. Section 1985(3) "does not apply [] to private conspiracies that are aimed at a right that is by definition a right only against state interference, but applies only to such conspiracies as are aimed at interfering with rights protected against private [] encroachment." <u>Id.</u> at 278 (recognizing only the Thirteenth Amendment rights of interstate travel and freedom from involuntary servitude) (internal quotations and citations omitted). "When the asserted constitutional deprivation is based upon a right guaranteed against government interference – for example, rights secured by the Fourteenth Amendment – plaintiffs must demonstrate some state involvement." <u>New York State Nat'l Org. for Women v. Terry</u>, 886 F.2d 1339, 1358 (2d Cir. 1989) (quotations and citation omitted).

Here, as all of the named defendants are private parties or entities, and no state action is alleged, plaintiff's claims must be judged pursuant to §1985(3). Plaintiff fails to meet these requirements. He alleges that defendants commenced and maintained an eviction action against him as retaliation for his activities as part of the tenants' association. Because of his work in the tenants' association, plaintiff alleges, he developed an adverse relationship with Walker and Muller. It was this relationship, and his work as an activities, that plaintiff claims motivated any

4

attempt to evict him. Indeed, the only race-based allegation he makes is that one defendant, Halligan, made "personal remarks concerning the race of Plaintiff Poles." There is no allegation that this Halligan, who worked for the law firm hired by BCHS to prosecute the eviction action, was motivated in his actions or intended to discriminate on the basis of race. Even if he was, plaintiff would have to allege that the decision of BCHS to evict him was based on his race, because Halligan was merely carrying out BCHS' direction. Plaintiff has made no allegation that BCHS's actions were motivated by race-based animus, claiming that they were in retaliation for his work with the tenants' committee.

Moreover, plaintiff does not identify any deprivation of a right protected from private infringement. He alleges that defendants misused legal procedure with the intent to deprive him of the equal protection of the laws, a Fourteenth Amendment claim. However, plaintiff has not shown any state action, which is required for a Fourteenth Amendment.

Finally, there is no allegation that Halligan, or any other defendants, conspired with anyone else to infringe plaintiff's rights on the basis of race. Because the defects in plaintiff's pleadings are substantive, they could not be cured with better pleading. Cuoco, 222 F.3d at 112. For these reasons, the §1985(3) claims against all defendants are dismissed.

## C. 42 U.S.C. §1981 Claims

Plaintiff alleges that Borah Goldstein attorneys Halligan and Borah, and the law firm itself, denied him "the full and equal benefit of all laws and proceedings for the security of property as is enjoyed by white citizens," and interfered in the "conditions of the contractual relationship" in violation of his rights under 42 U.S.C. §1981. Subsection (a) of that title provides that "All persons within the jurisdiction of the United States shall have the same right in

every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." This section of the Civil Rights Acts does not require state action and private parties may be held liable pursuant to it. Phillip v. Univ. of Rochester, 316 F.3d 291, 294-98 (2d Cir. 2003).

"To establish a claim under §1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981 requires that a defendant's actions were both "intentionally and purposefully discriminatory'" and that these discriminatory actions were motivated by plaintiff's race or ethnicity. Reyes v. Erickson, 238 F. Supp. 2d 632, 638 (S.D.N.Y. 2003) (internal quotations and citations omitted). Where a plaintiff's claim is based on the right to make and enforce contracts, he must, as a threshold matter, "identify an impaired contractual relationship, under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 126 S.Ct. 1246 (2006) (internal citations omitted).

Plaintiff's claims against the attorneys and law firm fail because he has not identified any contractual relationship pursuant to which he has rights, much less rights that were impaired. The only contractual relationship at issue is that between plaintiff and BCHS. It appears that that contractual relationship is not impaired as plaintiff prevailed in the Housing Court action and continues to live in BCHS housing.

Permitting plaintiff leave to replead would be futile. Even if he brought the claims against the right defendant, BCHS, they would still fail because he has not suffered the requisite harm. Although plaintiff alleges that he was denied the 'benefits, privileges, terms, and conditions of the contractual relationship," he continues to live in BCHS housing and has only pointed to emotional and psychological injuries from the Housing Court proceedings. See Cuoco, 222 F.3d at 112.

Moreover, even if plaintiff were to bring these claims against BCHS, and assuming he could show that BCHS was somehow responsible for the conduct of the attorneys, his claims would still fail because his allegations of racial discrimination are insufficient. Plaintiff argues that the eviction proceedings were commenced on the ground of nonpayment of rent and asserts that defendants were motivated to evict him in retaliation for his activities in the tenants' association. The only allegation in support of this theory of racial animus is that Halligan made an offensive comment at a court conference. Plaintiff has not asserted that he suffered any detriment to his housing contract or in the court proceeding, in which it appears he prevailed as he continues to live in the apartment. Courts have repeatedly found such allegations insufficient. "[N]aked assertions by plaintiffs that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race are too conclusory." Reyes, 238 F. Supp. 2d at 638 (internal quotations and citations omitted). Cf. Pierce v. Netzel, 99-9390, 2000 U.S. App. LEXIS 16968, at *3 (July 13, 2000) (finding that plaintiff sufficiently alleged racial animus as motivation for adverse conduct where he specified a number of incidents in which defendant demonstrated his racial animus against African-Americans, including describing the incidents in detail, and noting that such allegations "were a

7

far cry from the type of conclusory allegations we have previously deemed insufficient to state a claim."). Accordingly, plaintiff's claims pursuant to §1981 must also be dismissed.

**D. State Law Claims**

In addition to his two federal claims, Plaintiff brings additional causes of action under New York State Law. Because the Court finds that the federal claims are meritless and dismisses them, it will not exercise supplemental jurisdiction over the state law claims.

## CONCLUSION

For the reasons set forth above, the Complaint is dismissed against all defendants for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B). Plaintiff's state law claims are dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917 (1962).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
May 14, 2010